Good morning, Your Honors. Priscilla Wong for the petitioner Herman Kusnadi. Go ahead. This is a case for political asylum. The petitioner is a native and citizen of Indonesia. He filed an asylum claim based on two elements. First, that he's a Chinese Indonesian, and second, that he's a Christian. The asylum application was denied on the grounds of adverse credibility, and the board affirmed the IJ's decision. The judge also found that he filed a frivolous application, and the issue here is whether or not the petitioner did indeed file a frivolous application. The IJ's decision Well, he knew that the application that was ultimately filed had incorrect information. Yes. And that That was the grounds for adverse credibility. And he knew that? He knew that there were certain elements in the declaration that had statements which the court characterized as exaggerations and add-ons. Right. Which he acknowledged he didn't they weren't truthful. Well, he recanted that declaration that was filed earlier. He signed the Yes. He affirmed, right. The declaration and the application. He knew it was Yes. He adopted that. In fact, he even called to inquire why they did this, why they elaborated. Yes. Right? Yes. That's part of the record. And he signed it. Right. Well, did that lawyer, Pineda, have anything to do with that? Pineda? Yes. No, I don't think he's associated with this case. Okay. I may have mixed him up with another case. It could be, but he's not involved in this case. Did a lawyer tell him that he should sign that paper? The first application that he filed with the asylum office was prepared by this organization Chinese Indonesian American Society, which I think had no lawyers in the organization. And that organization was ultimately prosecuted for filing fraudulent asylum applications. At any rate, the IJ's decision was handed down before matter of YL and all the other cases dealing with frivolous applications subsequent to even the board's decision, including matter of BY and this Court's decision in Liu's case. So where the IJ's decision, the board's decision, where did the IJ go wrong in light of those recent cases? Well, first of all, there's the question of notice. The IJ simply said the notice on the application form for asylum was sufficient notice, and this is not in accordance with 8 U.S.C. 1158, I think, which says that the attorney general shall give warning to the applicant of the consequences of filing a frivolous application. Let me ask you this. Wasn't it this was an affirmative asylum application? Yes. So when he filled out the application, I thought I read that the application was interpreted to him, was translated for him. Yes. And the application had the warning on it, right? Right. So what do we do with that piece of information? Well, that isn't sufficient according to, I think it was one matter of BY, for example, where the board said that the judge should give warning to the applicant at least prior to the merits hearing. And in this case, the asylum application was signed in 2001. And if a warning was given, it was at the asylum office. This was never repeated in the immigration court. And the hearing itself took place 2005, which was four years after. As I said, though, as I recall, this was in a situation where he showed up for an removal hearing and said, I want to apply for, I'm going to apply for, for a site for relief. And then the I.G. is required to give him the application and to warn him. That wasn't this situation, was it? I don't think there's a distinction between filing an affirmative application and filing the application before the court. The notice has to be given. Okay. So notice is deficient. There was no notice from the immigration court. Okay. Where else did the I.J. and the BIA go wrong? There was no separate analysis of what was material and what was a deliberate and intentional fabrication. The I.J.'s decision simply says, and she does make a specific finding of frivolous frivolousness, but she tacks it on after she makes an adverse credibility determination. And she gives no separate reasoning for the frivolousness determination. She says that based on what I said about adverse credibility, I therefore find that this is a frivolous application. That's not sufficient under Y.L. or under B.Y. or even under Liu v. Holder, because there is a distinction between adverse credibility and frivolousness. The burden of proof in an adverse credibility situation is on the alien to prove by substantial evidence. In frivolousness determination, the burden is on the government to prove by substantial evidence. And there is no preponderance of the evidence indicated in the decision. Any other deficiencies from your? Well, there is no ñ in the decision, you don't find any analysis of material elements that were deliberately fabricated. We don't know what the judge ñ So your understanding of the recent case law is that it's just not enough to say that here, where he knew ñ knowingly filed a false declaration, parts of the declaration were knowingly false. That doesn't ñ that can't meet the frivolous ñ the grounds for finding a frivolousness unless the I.J. specifically identifies those statements that are material? That's my understanding of the case law. Besides which, we don't know what material elements she's considering here, because she doesn't set it down on paper. There are basically two elements to his claim. First, that he's Chinese, and Chinese are subject to racial discrimination in Indonesia. And second, that he's Christian, and they're subject to religious persecution. Both of these claims are ñ he hasn't recanted either one of those claims. He's never denied either one of them. And the judge simply says she doesn't believe it. Well, she doesn't believe it doesn't turn it into a lie. Well, isn't the ñ I don't know about the country report, but I thought the ñ she said that there are places in Indonesia where there is ethnic and sectarian abuse, but it isn't global all over. There are places in Indonesia where Christians are not bothered. And there are places where Muslims don't predominate and don't beat people up. And so what's ñ what's wrong with the ñ I.J.'s finding on that? I think it was the board that made that statement, that there were places in Indonesia where he could safely practice his religion. That doesn't make that, in turn, his statement that he's being persecuted because of his Christianity. He isn't claiming he was persecuted by the government because he's persecuted by people that don't like Christians. Christians, right. Well, that happens all over the world. There are places right here in the United States where people don't like somebody's religion and they get into fights with them and throw rocks at them and whatever. That doesn't mean that the country is abusing them. That might be a reason for not giving him asylum, that there might be places where he could safely practice his religion. But that doesn't turn this into a frivolous application. I mean, there are places in Indonesia ñ Well, I know these are two separate questions. Yes. The frivolous question, I'll ask the government about that. But on his ñ on the merits of his main case, doesn't he have to show that this is a ñ is not ñ that her findings are not supported by substantial evidence? We're not arguing the decision on the asylum application. You're only arguing the frivolousness. The frivolousness determination is the only issue that we presented to the Court. You've made your point on that. Are there any other questions? No. Thank you. Thank you. We'll hear from the government. May it please the Court. Ada Bosk on behalf of the United States. Because Mr. Kusnadi's knowing submission of a fraudulent application supports the Board's frivolousness finding, we ask the Court to deny the petition for review. Kusnadi does not dispute or has not disputed that he submitted a fraudulent application. His argument before the Board ñ his only argument before the Board and here is that because the asylum application related to his ethnicity and his religion, that material elements of this claim were not fabricated. But the material element is not limited to the statutory protected ground. In order to establish past persecution, he also had to show conduct rising to the high level of past persecution. And the fabrications, and he acknowledged that they were fabrications in the asylum application, were certainly meant to, in his words, secure asylum, that is, persuade a fact finder that he had suffered past persecution. And there are a number of examples of that. In his asylum application, he claimed he was very badly beaten in 1966. Excuse me. That's not true. He didn't ñ that didn't happen to him. He said that in 1984, he established a home church. That's not true. He said that in 1998, the church that he was attending was set ablaze by Muslims while they were inside. I mean, that's not true. We understand that. But let me ask you about the notice. There are four procedural safeguards that are supposed to be observed before a case is determined to be frivolous. Now, it's the frivolousness part that's bothering this person. He came in with this canned script. We see a lot of these. There are factories right here in the Bay Area that manufacture these scripts all day long. And this script, he signed off on it, because the people that fixed it up for him told him that he should sign it. He didn't understand the language it was written in, and he didn't understand what it said. And nowhere was he ever told by anybody who would tell him in his own language that a frivolous petition would get him into deep trouble. Well, Your Honor, we would disagree with that. First of all, I would note that this is an argument that Kusnadi did not raise before the board. He never challenged that he didn't have adequate notice of the consequences of filing a frivolous application. Well, he's challenged it here. Well, but the statute requires him to have exhausted any argument that he presents to this Court before the board, and the board could have addressed this specific issue. It's pretty clear before the board that he challenged the frivolousness finding. But this Court has found that general challenges are not sufficient, that he had to address the specific issues. But it's also pretty clear from the board's recent decisions about what constitutes a proper frivolousness finding, the four safeguards that Judge Goodwin just noted. Sure. It's sort of embedded in the argument. Okay. I don't want to waive our jurisdictional argument, but I will answer the Court's question. The board, contrary to the board, the IJ's decision and the board's decision here, of course, preceded all the YL and the BY. But the board has never, in either of those decisions, found that a warning in an asylum application is legally insufficient. In fact, the regulations, or I should say the preamble to the regulations, make clear that the language that's included in an asylum application is legally sufficient. It does warn applicants of the consequences of filing an asylum application. And contrary to what Mr. Kusnada may be arguing here, he repeatedly testified that he went through the application with the organization and had that application explained to him. He did question the fact that it had multiple fabrications, but he decided to go forward with the application and, moreover, decided to go over, decided to maintain that story before an asylum officer during his interview. The frivolousness is not a surprise to him. When DHS reported before the immigration court that his application might be unfouled under the auspices of Operation Jakarta, the immigration judge broke. Mr. Kusnada then had an opportunity to file an amended declaration, and that's when he first files an amended declaration. When DHS had the plea agreement and the documents concerning the criminal investigation, the immigration judge again broke. He gave them a continuance for them to review the materials, the plea agreement and the criminal documents, and Mr. Kusnada nevertheless went forward. He only recanted the initial application upon redirect examination. So this isn't – contrary to what he may be suggesting now, the Board A has never found that the notice in the asylum application is not sufficient, and he plainly understood that what he was doing was filing a frivolous application, and that knowing – knowing he did that had consequences. I mean, essentially, it's a lot of why he sort of steps away from portions of the application during his testimony. But the notice issue, again, I would say was not exhaustive. The only issue that they raised before the Board was materiality, and that's simply we don't – that evidence doesn't compel a contract. Do you think under the recent case law by the Board and by this Court that, you know, despite what he did here, the IJ's decision is pretty summary on the issue of frivolousness? Do you think the case law requires more specificity, you know, identifying what you just said as the elements that, you know, that were material to his application? She didn't really do that here. Obviously, the immigration judge didn't have the benefit of the cases that followed it. I think this was actually one of the first cases that came before an immigration judge, at least in conjunction with Operation Jakarta. But the Board, in its subsequent decisions, has said that it is fair and it is possible for an immigration judge to incorporate portions of an adverse credibility determination, for example, into the substance of the materiality – excuse me, the frivolousness finding. I mean, obviously, the immigration judge's decisions are oral. They are given at the time, and he's – they generally aren't going to repeat a lot of the information that is contained earlier in decision. But the basis, we believe, for the immigration judge's frivolousness finding is fairly clear. I mean, Mr. Kusnadi submitted an application that he knew contained false information, and he went forward with that application essentially until the Department of Homeland Security presented evidence of fraud. So I think the immigration judge did sufficiently explain why there were material misrepresentations, why he didn't believe Mr. Kusnadi with regard to the ultimate allegations that he put forward. I would note, just to correct a little bit of what opposing counsel said, the Board actually found him credible but denied his asylum application on the merits. But as she said, they haven't contested that portion of the finding. But the immigration judge nevertheless went through why he didn't believe Mr. Kusnadi's several stories and why those were material in that they related to whether he had suffered past persecution. And deliberateness certainly hasn't been an issue. Mr. Kusnadi repeatedly testified that he knew that the application contained fabricated stories, but he nevertheless decided to go forward and went forward with an asylum interview and resubmitted that application before the immigration judge. Does it make any difference, you know, did I.J. knew all of this before he made his decision? I know she made that argument in their brief, but that's not exactly how it happened. I mean, when the immigration judge first got the case, I think there were several hearings before DHS alerted the immigration court and Mr. Kusnadi at the same time that there was an issue, that there was an Operation Jakarta, and his application might fall under that investigation. And again, it's only after that that he submits an amended declaration. And later on, DHS submits the plea agreement, and that's pretty much during cross-examination, sort of in the middle of cross-examination. And at that point, the immigration judge again broke, giving Mr. Kusnadi an opportunity to review that material. So I don't think it's fair from the – a fair reading of the record to say that the immigration judge suspected Mr. Kusnadi all along. There are certainly multiple opportunities for Mr. Kusnadi to explain why he went forward with a fraudulent application or to essentially withdraw the fraudulent application, but that's not what he opted to do. He filed an amended one, and then only upon redirect examination did he actually recant the initial one. So for those reasons and the reasons set forth in our brief, we ask that the Court deny the petition for review. Roberts. As long as you have any rebuttal, do you want to offer any rebuttal? Just briefly, Your Honor. Speak up. Speak loudly so we can hear you. Sorry. Operation Jakarta is actually something that both the board and the judge threw up as a reason for denying the application. Actually, this is guilt by association. It's true that the organization behind Operation Jakarta was prosecuted for filing fraudulent applications, but we have no indication that the 12-page declaration that was prepared by this organization contained all lies about the situation in Indonesia and as it pertains to this applicant. Certainly, there are country condition reports and State Department reports on the religious situation in Indonesia, which indicates that there is a basis of truth in this application. Besides which, nobody's pointed out in all the 12 pages which allegations are material and which ones are not and which are lies and which are the truth. Okay. Thank you, Your Honor. Thank you. Thank you, counsel. The matter is submitted.
judges: O'grady, Goodwin, Paez